UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

U<small>NITED</small> S<small>TATES OF</small> A<small>MERICA</small>,

    Plaintiff,

    v.

T<small>HOMAS</small> R<small>ODELL</small>-H<small>AROLD</small> M<small>ILLS</small>,

    Defendant (1).

Case No. 13-cr-20487

U<small>NITED</small> S<small>TATES</small> D<small>ISTRICT</small> C<small>OURT</small> J<small>UDGE</small>
G<small>ERSHWIN</small> A. D<small>RAIN</small>

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE [42]

### I. I<small>NTRODUCTION</small>

On January 5, 2018 Defendant Thomas Rodell-Harold Mills ("Defendant") was notified to appear for a supervised release violation hearing. ECF No. 35. This Court sentenced Defendant to serve 12 months of imprisonment, which was to run consecutive to the Honorable Victoria A. Roberts' sentence, for violating three conditions of his supervised release. ECF No. 76.

Presently before the Court is Defendant's letter seeking relief due to the current COVID-19 pandemic, ECF No. 42, which the Court construed as a Motion for Compassionate Release. *See* ECF No. 43. Following this Court's Order on June 19, 2020, Defendant's counsel submitted a supplemental brief. ECF No. 46. The Government filed a Response on July 15, 2020. ECF No. 49. Defendant filed his

Reply on July 22, 2020. ECF No. 50. On July 24, 2020, the Court ordered the parties to file supplemental briefs. ECF No. 51. The parties timely filed their briefs. *See* ECF Nos. 52, 53.

A hearing on Defendant's Motion was held on July 28, 2020. For the reasons that follow, the Court **GRANTS** Defendant's Motion [#42] and **ORDERS** Defendant's sentence of imprisonment for his supervised release violation is reduced to time served.

## II. BACKGROUND

### A. Factual Background

On August 15, 2013, Defendant plead guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). ECF No. 15. On December 13, 2013, the Court sentenced Defendant to a term of 42 months imprisonment and 3 years of supervised release. ECF No. 27. Thereafter, the Court found that Defendant violated the terms of his supervised release and sentenced him to a term of 12 months imprisonment to run consecutive to the Honorable Victoria A. Roberts' case, *United States v. Thomas Rodell-Harold Mills*, 17-cr-20698. Specifically, this Court determined that Defendant violated three conditions of his supervised release: (1) that he shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer; (2) that he shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon; and (3) that he

comply with the requirements of the Sex Offender Registration and Notification Act. ECF No. 39.

Defendant is currently serving a 48-month aggregated sentence. ECF No. 52, PageID.565. This sentence includes Judge Roberts' 36-month sentence and this Court's 12-month sentence.[1] *Id.* According to the Government, Defendant began serving Judge Roberts' sentence on June 21, 2018. ECF No. 53, PageID.571. Defendant earned 200 days of credit from pretrial detention and 216 days of good-time credit. *Id.* These days cumulatively account for approximately 22 months. *Id.* Accordingly, Defendant satisfied Judge Roberts' sentence and began serving his sentence in the instant case on April 20, 2020. ECF No. 49, PageID.510. As of May 6, 2020, Defendant served 31 months and 5 days in BOP custody, which amounts to 65% of the "full term" and 76.3% of the "statutory term." ECF No. 52, PageID.565.

Defendant now moves this Court for an order reducing his sentence to time served and releasing him from prison due to the threat of COVID-19. ECF No. 46. Defendant is thirty-eight years old. ECF No. 49, PageID.513. The BOP anticipates Defendant's release on February 25, 2021. ECF No. 46, PageID.156. According to Defendant, he is eligible for home detention on October 3, 2020. *Id.* At the hearing,

---

[1] The Court takes judicial notice that 18 U.S.C. § 3584(c) requires the Bureau of Prisons ("BOP") to treat "[m]ultiple terms of imprisonment ordered to run consecutively or concurrently … as a single, aggregate term of imprisonment" for administrative purposes. 18 U.S.C. § 3584(c).

Defense counsel explained that Defendant is scheduled to be transferred to a residential reentry center ("RRC") on September 1, 2020.

In his instant Motion, Defendant seeks early release from his term of imprisonment by arguing that he has served 65% of his aggregate sentence and that he is at an increased risk of severe complications from COVID-19. He alleges that he is particularly vulnerable due to his longstanding asthma; high blood pressure; body mass index ("BMI"); and his race. *Id.* at PageID.159. Defendant asks for a judicial recommendation for home confinement under 18 U.S.C. § 3624(c)(2), as extended by the CARES Act § 12003(b)(2), in the alternative. *Id.* at PageID.156.

**B. FCI Ray Brook**

Defendant is currently serving his sentence at FCI Ray Brook in Ray Brook, New York. The BOP website does not list FCI Ray Brook as one of its facilities with active COVID-19 cases, and the Government emphasizes that "only one inmate" at the time of its writing tested positive.[2] ECF No. 49, PageID.511. FCI Ray Brook has had twelve positive cases amongst the prison population and ten positive cases amongst staff. *See BOP: COVID-19 Update*, https://www.bop.gov/coronavirus/ (last updated July 29, 2020). In its initial reporting of the pandemic, *The Appeal* highlighted FCI Ray Brook's slow response

---

[2] At the hearing, the Government asserted that there were no positive cases amongst inmates or staff.

to the spread of coronavirus among correctional officers at the facility, and as a consequence, the outbreak reached its prison population. *See* Harry August & Alex Garnick, *'The Situation Here is Dire': How an Upstate New York Prison Failed to Contain a COVID-19 Outbreak*, The Appeal (Apr. 16, 2020), https://theappeal.org/coronavirus-upstate-new-york-prison-failed-to-contain-outbreak/.

At least three courts in this District have denoted that a prison's report of zero confirmed cases "is more likely the result of a lack of testing than a lack of the virus' presence in the prison." *United States v. Gardner*, No. 14-cr-20735-001, 2020 WL 4200979, at *2 (E.D. Mich. July 22, 2020); *see also Segars v. United States*, No. 16-20222-3, 2020 WL 3172734, at *3 (E.D. Mich. June 15, 2020); *United States v. Agomuoh*, No. 16-20196, 2020 WL 2526113, at *3, 9 (E.D. Mich. May 18, 2020). According to the BOP's website, there are 565 incarcerated individuals at FCI Ray Brook. *FCI Ray Brook*, https://www.bop.gov/locations/institutions/rbk/ (last visited July 29, 2020). FCI Ray Brook has only conducted 86 tests. *BOP: COVID-19 Update*, https://www.bop.gov/coronavirus/ (last updated July 29, 2020). The Court takes notice that this equates to roughly a 15% testing rate.

## III. LAW & ANALYSIS

### A. Legal Standard

Title 18 U.S.C. § 3582(c)(1)(A) governs this Court's authority to consider motions for compassionate release. As amended by the First Step Act of 2018, the relevant statutory language provides that a court may grant compassionate release under the following circumstances:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A)(i). Accordingly, a court must address two key questions. The first is whether a defendant has exhausted all administrative remedies with the BOP. The second is whether, after considering "extraordinary and compelling reasons," as well as the sentencing factors set forth in 18 U.S.C. § 3553(a), there are sufficient grounds to warrant a sentence reduction.

Moreover, a sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). U.S.

Sentencing Guidelines Manual § 1B1.13 is the "applicable policy statement" which this Court must comply with. This section explains that a defendant must "not [be] a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g). Further, a defendant must fit within at least one of four categories of "extraordinary and compelling reasons." Application Note 1 to U.S.S.G. § 1B1.13 provides, in relevant parts, when extraordinary and compelling reasons exist:

> (A) Medical Condition of the Defendant
>
> > (ii) The defendant is (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> …
>
> (D) Other Reasons – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Here, Defendant asserts that his preexistent medical conditions, combined with his continued incarceration during the COVID-19 pandemic, "substantially diminish[ his] ability [] to provide self-care within the environment of a correctional facility." ECF No. 46, PageID.159 (citing U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)) (adjustments in original). Defendant thus argues that these circumstances are "extraordinary and compelling" pursuant to U.S.S.G. § 1B1.13 cmt.1(D). ECF No.

-7-

46, PageID.159. Moreover, Defendant asserts that the 18 U.S.C. § 3553(a) factors favor his release, ECF No. 46, PageID.172, and that he is not a danger to the community, ECF No. 50, PageID.533.

### B. Analysis

#### 1. Exhaustion

The First Step Act of 2018 amended 18 U.S.C. § 3582 to permit defendants to move for compassionate release themselves. First Step Act § 603(b), Pub. L. No. 115-319, 132 Stat. 5194, 5239 (Dec. 21, 2018). In a defendant-initiated motion for compassionate release, the district court may not act on the motion unless the defendant files it "after" either completing the administrative process within the BOP or waiting thirty days from when the warden at the facility received his or her request. 18 U.S.C. § 3582(c)(1)(A).

Here, the Government does not raise the issue of exhaustion. ECF No. 49, PageID.523. Indeed, Defendant petitioned the warden for consideration for compassionate release on May 11, 2020. ECF No. 46, PageID.158–59; *see also* ECF No. 46-3, PageID.189. The warden denied his petition that same day. ECF No. 46-3, PageID.189–90.

Accordingly, Defendant has exhausted his administrative remedies, as is now mandatory per the Sixth Circuit's decision in *United States v. Alam*, 960 F.3d 831,

2020 U.S. App. LEXIS 17321 (6th Cir. 2020). He thus satisfies the Court's first key question in its analysis.

### 2. Extraordinary and Compelling Reasons

As explained above, in order for a court to grant compassionate release, a defendant must demonstrate that "extraordinary and compelling reasons" exist to warrant a reduction in sentence. 18 U.S.C. § 3582(c). The Sentencing Commission has provided guidance about what constitutes "extraordinary and compelling reasons" in Section 1B1.13 of the Sentencing Guidelines. U.S.S.G. § 1B1.13. These reasons are classified in four categories: (1) the defendant's medical condition; (2) the defendant's age; (3) family circumstances; and (4) additional reasons "other than, or in combination with" the first three elements. *Id.* at cmt. n.1(A)-(D).

Here, Defendant argues that his longstanding asthma; high blood pressure; BMI; and race put him at increased risk of severe complications from the novel COVID-19 disease. ECF No. 46, PageID.159. Defendant's medical conditions, particularly his asthma and high blood pressure, are well-documented. *See, e.g.*, ECF No. 48, PageID.450. The Court will address Defendant's three medical condition in turn.[3]

---

[3] Notably, the Government does not contest Defendant's argument that he presents extraordinary and compelling circumstances. ECF No. 49, PageID.527. At the hearing, the Government specifically asserted that it does not dispute Defendant's argument as to his extraordinary and compelling circumstances. The Government

First, Defendant explains that he suffers from hypertension. ECF No. 46, PageID.160. During his most recent medical visits, Defendant's blood pressure was 133/97 and 155/109. ECF No. 48, PageID.465. At the hearing, Defense counsel indicated that his high blood pressure is "uncontrolled." She explained that during Defendant's most recent medical visit, his blood pressure was an alarming 147/97. Defendant is currently prescribed two medications to manage his high blood pressure, including Amlodipine (5mg) and Hydrochlorothiazide (25 mg). *Id.* at PageID.466, 471.

Second, Defendant asserts that he has struggled with asthma since childhood. ECF No. 46, PageID.162 (citing PSR ¶ 63). Defendant explains that he is prescribed an Albuterol Inhaler for his condition. *Id.* The Court takes notice that Defendant's asthma is not only documented in the provided medical records, ECF No. 48, PageID.450, 453, but also in his Presentence Investigation Reports from 2018 and 2013. Moreover, his asthma was listed in his 2013 Pretrial Services Report. The Government emphasizes that Defendant's records "do not indicate the severity of his asthma," but acknowledges that his records "do indicate that he is regularly prescribed medication to treat it." ECF No. 49, PageID.526. While the Court denotes that Defendant's medical records do not include the severity of his

---

instead argues that the Court "need not decide that question" because Defendant poses a danger to the community. *Id.*

condition, it emphasizes that a daily inhaler use in a facility which places individuals like Defendant in a 22-hour lockdown—with little time in the yard and with allegedly poor air circulation—demonstrates the condition's seriousness.

Third, Defendant cites to his obesity as another medical condition to support his instant Motion. ECF NO. 46, PageID.163. Specifically, he explains that his BMI is 34.3. *Id.* Defendant's provided medical records reflect this number. ECF No. 48, PageID.486.

The CDC has indicated that at least two of Defendant's cited medical conditions, asthma and obesity, place Defendant at an increased risk for severe illness from COVID-19. *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated July 17, 2020). In addition to contesting the severity of Defendant's asthma, as denoted above, the Government asserts that "the link between asthma and COVID-19 is complicated and not well developed[.]" ECF No. 49, PageID.526. The Government also emphasizes that "there may be no link between hypertension and severe forms of COVID-19 complications." *Id.* at PageID.526–27.

Even assuming that Defendant's conditions independently do not fit in the CDC's definition of severity, which is not the case here, "his conditions still exacerbate each other, placing him in a much more vulnerable position than a healthy

-11-

person, if he were to get COVID-19." *United States v. Gardner*, No. 14-cr-20735-001, 2020 WL 4200979, at *6 (E.D. Mich. Jul. 22, 2020) (quoting *Howard v. United States*, No. 16-20222-2, 2020 WL 2615509, at *3 (E.D. Mich. May 22, 2020)). In sum, Defendant suffers from a number of medical illnesses, two of which are identified by the CDC as exacerbating the risk of serious harm if the individual contracts COVID-19. Should an outbreak of COVID-19 occur in FCI Ray Brook, the Court would be especially concerned for Defendant's susceptibility of the novel coronavirus. Moreover, the Court is troubled by FCI Ray Brook's lack of testing. COVID-19 is dangerous everywhere, but the novel disease is especially harmful within correctional institutions, where incarcerated individuals have a limited ability to exercise encouraged community practices such as social distancing and frequent handwashing. *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Centers for Disease Control (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html. The lack of widespread testing exasperates the Court's concerns about Defendant's likelihood to contract COVID-19 for the remainder of his time at FCI Ray Brook. *See United States v. Agomuoh*, No. 16-20196, 2020 WL 2526113, at *9 (E.D. Mich. May 18, 2020) (internal citation omitted).

Accordingly, Defendant has demonstrated that extraordinary and compelling circumstances warrant compassionate release.

### 3. 18 U.S.C. § 3553(a) Factors

The Court must also consider the sentencing factors under 18 U.S.C. § 3553(a) and determine whether such factors support or undermine the sentence reduction. *See* U.S.S.G. § 1B1.13. The factors set forth in § 3553(a) include a defendant's history and characteristics; the nature and circumstances of the offense; due consideration of the seriousness of the offenses; promoting respect for the law; providing just punishment; affording adequate deterrence; protecting the public from further crimes by the defendant; and providing him or her with any necessary correctional services and treatment. *See* 18 U.S.C. § 3553(a).

After consideration of these factors in May 2018, this Court imposed a sentence of 12 months imprisonment. Using this same analysis and upon further, careful consideration during the current pandemic, the Court will release Defendant from federal custody. The Court agrees with Defendant that retribution, deterrence, incapacitation, and rehabilitation do not justify Defendant's continued incarceration, which is now succumb to 22-hour confinement as his facility takes precautions to prevent the spread of coronavirus among its prison population and staff.

At the hearing, the Government emphasized Defendant's extensive criminal history, including a violent offense from November 2009, which Defendant

committed when he was twenty-eight years old. PSIR ¶ 37. There is no question that Defendant has a lengthy criminal history, one which includes three felon-in-possession convictions and four failures to comply with the Sex Offender Registration Action. But since 2009, Defendant has had no criminal convictions which involve a violent offense. While it is true that the nature and circumstances of the underlying offense before Judge Roberts involved a loaded firearm, ECF No. 49, PageID.529, the Court emphasizes that Defendant has satisfied that sentence in late April 2020, ECF No. 53, PageID.572.

Since being arrested for the instant offense, Defendant has demonstrated that he is committed to successfully altering his conduct. At the hearing, Defendant recognized his extensive background and argued that this prior conduct does not define who he is right now. In letters of support, several of Defendant's family members have corroborated Defendant's personal growth during the last few years. *See* ECF Nos. 46-8, 46-9. Moreover, Defendant's behavior during his time in BOP custody convinces the Court that he has been rehabilitated. The Court will address Defendant's active program participation while incarcerated in the next section.

The Court takes notice of the Government's argument that Defendant "has not been deterred by past sentences of incarceration." ECF No. 49, PageID.529. The Court disagrees. Defendant has a short period of time remaining on his current sentence, as the BOP anticipates Defendant's release on February 25, 2021. ECF

No. 46, PageID.156. While it may be true that serving the entirety of a sentence would have a stronger deterrent effect under normal circumstances, a longer sentence during a pandemic would also have a greater potential for exposing an individual like Defendant, whose immune system is significantly compromised. *See United States v. Gardner*, No. 14-cr-20735-001, 2020 WL 4200979, at *8 (E.D. Mich. July 22, 2020). Indeed, "the Court must weigh the value of deterrence against increasing the threat of a possibly lethal infection." *Id.* Here, the Court finds that the possibility of exposure outweighs the value of deterrence.

Accordingly, the § 3553(a) sentencing factors weigh in favor of Defendant's release.

### 4. Danger to the Community

Finally, the Court must determine that Defendant does not present a danger to the community, as provided in 18 U.S.C. § 3142(g). *See* U.S.S.G. § 1B1.13. The Sentencing Commission's Guidelines require that an individual granted compassionate release "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. 1B1.13.

As explained in the preceding section, Defendant has an extensive criminal record. However, the Court concludes that given his history—specifically the lapse in time from his last violent offense, PSIR ¶¶ 37; his spotless disciplinary record for the last six years, ECF No. 46-10, PageID.301; and his several medical conditions,

there is no need to maintain his incarceration to protect the public. Moreover, as noted above, the Court emphasizes that Defendant has displayed significant signs of rehabilitation during his recent incarceration at FCI Ray Brook. Defendant has participated and completed twenty programs over the last three years to develop skills necessary for his future success. *See* ECF No. 46-13, PageID.399. In his initial letter to this Court, Defendant attached several certificates for completing certain courses, including Values Clarification, Goal Setting & Achieving; Reentry Support Resources; The Alternatives to Violence Project, Inc.; and Anger Management. ECF No. 42, PageID.139, 140, 145, 147. At the hearing, Defendant emphasized the impact which The Alternatives to Violence Project, Inc. program has had on his life. He explained that this program has benefited his life and his future impact on others. *See also* ECF No. 46-15, PageID.410. These helpful programs are now suspended in light of the COVID-19 pandemic. The Court thus questions how continued incarceration during this pandemic can benefit Defendant as he continues to improve his life for the better and work towards becoming a productive citizen outside of the walls of confinement at FCI Ray Brook.

Furthermore, the Court emphasizes that neither Magistrate Judge R. Grand nor this Court made a finding that Defendant presented a danger to any other person or the community by clear and convincing evidence. Defendant instead consented

to detention for the underlying conduct. ECF No. 38. This lack of finding of dangerousness is significant and relevant for the Court's present analysis.

Finally, Defendant has a well-developed release plan. Defendant plans to live with his cousin, Tanesha Green, in Detroit, Michigan. ECF No. 46, PageID.172. Ms. Green owns a four-bedroom home and has offered Defendant one of the bedrooms. *Id.* At the hearing, Defense counsel emphasized that she has been contact with Ms. Green, who fully understands the necessity of social distancing. Defendant explains in his Supplemental Brief that Ms. Green "will ensure that [Defendant] will adhere to the CDC's and governor's guidance" as the pandemic continues. *Id.*

As for Defendant's employment options, he has articulated at least three avenues to obtain a job upon his release. First, Defendant's fiancé's father, Robert Johnson, has offered to give Defendant a job as a handyman,[4] which would assist his own work. ECF No. 46-9, PageID.300. Mr. Johnson states that he could use the help "every week" and that he will pay Defendant each week.[5] *Id.* Second, Defendant's uncle, Shawn McLendon, works at a factory that hires individuals who have been convicted of felonies. ECF No. 46, PageID.171. Mr. McLendon has also

---

[4] Defendant's fiancé, Courtney Johnson, indicated in her letter to the Court that this work includes carpentry and lawncare. ECF No. 46-8, PageID.298.

[5] The Court also denotes the many positive things Mr. Johnson writes about Defendant in his letter. For example, Mr. Johnson states that he believes that Defendant has matured a lot and that he is a "good person and has a kind heart." ECF No. 46-9, PageID.299.

offered to help Defendant apply for work at this factory. *Id.* at PageID.172. Third, Ms. Green has expressed her plans to connect Defendant with "At Work," a temporary hiring agency which she found work for herself at one of Cadillac's planting factories. *Id.* Additionally, Defendant's fiancé, Courtney Johnson, indicated that she and Defendant have talked about starting a few businesses upon Defendant's release. At the hearing, Defendant informed the Court that he and Ms. Johnson have already started a business together. However, the aforementioned employment options allow Defendant to not have to rely on the success of this new business to support himself and his family. ECF No. 46, PageID.171. These employment options, in tandem with the living arrangement at Ms. Green's home, provide Defendant with a supportive environment to continue on a path of rehabilitation.

In light of these factors, the Court concludes that Defendant is not a danger to the community upon his release. Accordingly, all three components—the extraordinary and compelling circumstances; the § 3553(a) factors; and a finding that Defendant would not be a danger to the public—weigh in favor of immediate compassionate release.[6]

---

[6] Defense counsel contacted BOP senior counsel Paul Irby to confirm that this Court can effectuate Mr. Mills' immediate release. In his response, Mr. Irby confirmed that by reducing the consecutive 12-month supervised release violation term to time-served, Defendant would "satisfy the aggregated sentence completely." ECF No. 52-1, PageID.568.

## V. Conclusion and Order

For the reasons articulated above, **IT IS ORDERED** that Defendant's Motion for Compassionate Release [#46] is **GRANTED**. His sentence is reduced to time-served.

**IT IS FURTHER ORDERED** that Defendant be **IMMEDIATELY RELEASED** from custody, without holding him for a 14-day quarantine period at FCI Ray Brook. Defendant shall remain self-quarantined for 14 days after release in his cousin Ms. Green's home in Detroit, Michigan.

**IT IS FURTHER ORDERED** that upon release, Defendant shall commence his originally imposed 24-month term of supervised release, which the Honorable Victoria A. Roberts imposed on April 18, 2018. *See United States v. Thomas Rodell-Harold Mills*, 17-cr-20698, Judgment, ECF No. 17, PageID.74. This Court did not impose any term of supervised release.

**IT IS SO ORDERED.**

Dated: July 31, 2020

                                                    /s/Gershwin A. Drain
                                                    GERSHWIN A. DRAIN
                                                    United States District Judge

CERTIFICATE OF SERVICE
Copies of this Order were served upon attorneys of record and on Thomas Rodell-Harold Mills, No. 18604039, Federal Correctional Institution, P.O. Box 900, Ray Brook, New York, 12977 on
July 31, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager